1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

7

| | |
|---|---|
| STRYKER EMPLOYMENT COMPANY, LLC, a Michigan Limited Liability Company, | Case No.  2:23-cv-1610 |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF** |
| v. | |
| DANIEL GALAN, | |
| Defendant. | |

8
9
10
11
12
13

14      Plaintiff, STRYKER EMPLOYMENT COMPANY, LLC (along with its affiliates,

15   "Stryker"), for its Complaint for Injunctive and Other Relief against Defendant DANIEL GALAN

16   ("Galan" or "Defendant") states as follows:

17                          <u>**INTRODUCTION**</u>

18      1.      Stryker brings this action to recover its confidential and trade secret information

19   from its former employee, Daniel Galan, and to ensure that such information is not further used or

20   disclosed by Galan.  This action is necessary because repeated amicable efforts to recover and

21   remediate Galan's exfiltration of Stryker proprietary information have been met with delays and

22   obfuscation.

23      2.      Stryker is a leading provider of medical products and devices. Galan is a design

24   engineer who formerly worked at Stryker, helping to design its next generation of external

25   defibrillators. Galan's employment at Stryker ended in September of 2021.

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 1

SEYFARTH SHAW LLP
999 THIRD AVENUE
SUITE 4700
SEATTLE, WASHINGTON  98104-4041
(206) 946-4910

3.      Recently, Stryker learned that Galan published, on his personal website, detailed information about a Stryker project to which he was assigned during his employment, including highly-sensitive photos and information about a still-unreleased Stryker defibrillator product. While Galan agreed to remove that information from his website after Stryker demanded that he do so, Galan refuses to return Stryker's confidential and trade secret information that remains in his possession and present all of his devices and email for inspection and remediation.

4.      Galan's actions are in breach of his confidentiality obligations to Stryker, as well as a violation of Washington state and federal law. As a result of Galan's actions and his ongoing refusal to return Stryker's confidential and trade secret information to it (or even confirm that he no longer has same in his possession), Stryker now brings this lawsuit in order to ensure that its confidential and trade secret information are protected from further misuse.

## PARTIES

5.      Stryker Employment Company, LLC is a limited liability company organized and existing under the laws of the State of Michigan, with its nerve center and principal place of business in Kalamazoo, Michigan. Stryker Employment Company, LLC's sole member is Howmedica Osteonics Corp, which is a wholly owned subsidiary of Stryker Corporation.

6.      Galan is a former Stryker employee who is domiciled in, and a citizen of, Washington.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.  This Court also has jurisdiction pursuant to 18 U.S.C. § 1836(c) as Stryker brings claims for misappropriation of its trade secrets in violation of the Defend Trade Secrets Act of 2016.

8.      This Court has personal jurisdiction over Galan, and venue is proper in this District under 28 U.S.C. § 1391(b) because Galan resides in this judicial district and because a substantial part of the events giving rise to Stryker's claims occurred within this judicial district.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 2

1
2

**EVENTS GIVING RISE TO THIS ACTION**

***Stryker's Business and Galan's Role at Stryker***

3
4
5
6
7

9.      Stryker Corporation, along with its affiliated companies, is a global leader in the development, manufacture and sale of medical products and equipment, including its line of external defibrillators used to treat emergency cardiac arrhythmias. Stryker Corporation's LIFEPAK series of external defibrillators provide cutting-edge, lifesaving medical devices to customers ranging from individuals and businesses to emergency first responders and hospitals.

8
9
10
11
12

10.      The market for external defibrillators is highly competitive, and there are several other manufacturers with whom Stryker competes. In order to do so, and in order to offer the latest advances in medical research to its customers, Stryker dedicates a significant amount of time and resources exceeding $100,000 toward researching and developing improvements for its products and acquiring additional technology.

13
14
15
16

11.      Galan was employed by Stryker from May of 2018 to September of 2021 as an engineer specializing in user experience design for Stryker's external defibrillators. Specifically, Galan specialized in the design and creation of graphical user interfaces for Stryker's external defibrillator products: the means by which users interact with and control the device itself.

17
18
19
20
21
22
23
24
25

12.      The user interface feature of an external defibrillator is a key component of the overall device. External defibrillators use electric shocks to correct emergency heart conditions, and the amount of electricity delivered into a patient can be fatal if not properly applied. Making such devices easy to interact with and use, especially under the stress of emergency medical situations, is a key part of the appeal of Stryker's products. In his role as a user experience engineer, Galan worked closely with other members of Stryker's engineering teams designing those products. In order to fulfill his duties, Galan was also given significant access to Stryker's confidential and trade secret information about its products, including new products still in the design and testing phase.

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 3

13.     At the outset of his employment, and before he was given access to Stryker's confidential and trade secret information, Galan was required to sign a Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement ("the Agreement"). Galan entered into the Agreement on May 3, 2018, and a true and correct copy of the Agreement is attached hereto as **Exhibit A**. Galan's offer of employment and compensation from Stryker, along with his access to and receipt of Stryker's confidential and trade secret information, were conditioned upon his execution of the Agreement.

14.     Among other things, the Agreement provides for the protection of Stryker's confidential and trade secret information. The Agreement defines "Confidential Information" as "know-how, trade secrets, and technical, business and financial information and any other non-public information in any way learned by [Galan] during [his] employment with Stryker, including, but not limited to "(i) inventions, research, development, manufacturing, purchasing, finance processes, technologies, machines, computer software, computer hardware, automated systems, methods, engineering, marketing, merchandising, and selling…" (*Id*. § 2.3).

15.     Given Stryker's legitimate interests in protecting its Confidential information, Galan specifically agreed not to disclose it either during or after his employment at Stryker:

> "I recognize that Confidential Information is of great value to Stryker, that Stryker has legitimate business interests in protecting its Confidential Information, and that the disclosure to anyone not authorized to receive such information, including any entity that competes with Stryker, will cause immediate irreparable injury to Stryker. Unless I first secure Stryker's written consent, I will not disclose, use, disseminate, identify by topic or subject, lecture upon or publish Confidential Information. I understand and agree that my obligations not to disclose, use, disseminate, identify by subject or topic, lecture upon or publish Confidential Information shall continue after the termination of my employment for any reason."

(*Id*. § 5.1).

16.     Galan also agreed that upon the termination of his Stryker employment for any reason, he would immediately return to Stryker any and all Confidential Information in his

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 4

possession, whether in hard copy or electronic format, and acknowledged that his continued possession of such information after that point would be unauthorized. (*Id*. § 5.2).

17.     Galan also explicitly agreed that these restrictions were reasonable and necessary for the protection of the goodwill and continue business of Stryker, and that Stryker would suffer irreparable harm if he breached those restrictions. (*Id*. § 7.5).

18.     Beyond the Agreement, Stryker protects its confidential and trade secret information through other means, including by:

    a.  Requiring any individual with access to such information to sign similar non-disclosure agreements;

    b.  Requiring individual-specific password and login credentials for anyone accessing such information through electronic means;

    c.  Allowing limited access to certain confidential information based on need and level of employment;

    d.  Requiring employees accessing certain of Stryker's confidential information remotely to do so through a virtual private network and/or encryption; and

    e.  Restricting and monitoring physical access to Stryker's facilities.

### *Galan Violates the Agreement*

19.     Galan's employment at Stryker ended in September of 2021. Per the Agreement, Galan was required to return to Stryker any Confidential Information in his possession at that time, and any further possession of such information by Galan after that was unauthorized. (*Id*. § 5.2).

20.     At the end of January of 2023, Stryker representatives discovered Stryker materials publicly available on Galan's personal website: www.danielmgalan.com. Galan's website contains a number of sections detailing his past work for employers, including Stryker.

21.     Specifically, Stryker discovered that Galan published a wealth of Stryker's highly confidential information to that personal website and to others. The information that Galan

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 5

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

published or revealed to others included detailed designs and information about Stryker products that have still not been released to the market, including:

    a.  Detailed photos of a finished prototype for a still-unreleased Stryker defibrillator;

    b.  Photos referencing the use of specific algorithms that when used by that prototype result in certain layouts, touch points, data and/or screen transitions;

    c.  Device features that provide certain feedback as to quality of compressions and pace as well as providing feedback for shockable moment in CPR;

    d.  Ability and plans to use accessory devices for additional feedback in an emergent situation;

    e.  Features of bag holding the device for improved workflow, successful outcomes and ease of use in emergent situation;

    f.  Images of a separate project still in the concept development phase for Stryker's hospital customers;

    g.  Secondary devices being developed indicating market progression and dedication of resources;

    h.  Product name;

    i.  Disclosure of information to ChatGPT;

    j.  Voice/recording features;

    k.  Photos of Stryker's user interface design, including highly confidential part numbers; and

    l.  Photos of a whiteboard showing the detailed workflow for a secret Stryker project to which Galan was assigned.

    22.    All of the information described above constitutes Stryker's Confidential Information under the Agreement, and a trade secret under both Washington state and federal law. None of the information that Galan posted was publicly available elsewhere, and all of it would be invaluable in the hands of a competitor.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 6

1

***Galan Refuses to Cooperate***

2        23.     Upon discovering the information described above posted to Galan's website,

3   Stryker representatives immediately contacted Galan to demand that it be taken down and returned.

4   Galan agreed and purported to remove the information from his website, after acknowledging that

5   he should not have retained or published the information in the first place. Stryker was forced to

6   take additional steps to contact third-party internet search providers like Google to make sure that

7   any cached images of Stryker's confidential and trade secret information were also removed.

8        24.     Shortly after Galan removed Stryker's information from his website, Stryker

9   representatives spoke to him about the need to examine his personal devices and accounts to ensure

10  that no Stryker information remained on them. Simply put, the images and information that Galan

11  published to his personal website must have been saved somewhere else in order for Galan to do

12  so, and Stryker explained the need to make sure that such information was removed.

13       25.     Galan initially agreed to comply with Stryker's request, purporting to invite Stryker

14  to first create a forensic image of his devices and accounts (in order to ensure that relevant evidence

15  was preserved, the cost of which Stryker agreed to pay), then search for and remove Stryker's

16  information.

17       26.     Unfortunately, Galan's stated intention of cooperating with Stryker was short-lived.

18  In the first week of February 2023, Galan stopped responding to Stryker's requests to schedule the

19  forensic imaging and remediation to which he previously agreed. When Stryker representatives

20  were finally able to speak to Galan on February 14, 2023, he abruptly reversed his earlier offer

21  and stated that he would *not* commit to an inspection of his devices, then abruptly ended the call.

22  Stryker representatives emailed Galan the same day asking for a date and time to conduct the

23  forensic imaging and remediation of his devices, without any response.

24       27.     Stryker's counsel sent Galan a cease-and-desist letter on February 22, 2023,

25  warning Galan that unless he agreed to permit the inspection and remediation of his personal

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 7

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1    devices to ensure that he no longer had Stryker's information, that Stryker would pursue legal

2    action. Galan subsequently retained counsel.

3        28.    Between February 22 and August 8, 2023, counsel for Stryker repeatedly sent

4    requests to counsel for Galan to schedule a meeting during which a third-party forensic imaging

5    vendor would inspect and remediate Stryker's Confidential Information from Galan's personal

6    devices. Counsel for Galan repeatedly failed to agree to a specific date for the inspection and

7    remediation, and moreover, unbelievably claimed Galan does not own a computer. However,

8    Galan finally agreed to submit his personal cell phone for the imaging at his counsel's office on

9    August 8, 2023. As a result of the representation that Galan did not personally own a computer,

10   the third-party forensic imaging vendor, which Stryker hired at its own expense, planned to

11   conduct the inspection and remediation only of Galan's cell phone. At the August 8 meeting, Galan

12   provided his cell phone in addition to two computers for which he claimed one was not working

13   and the other was his girlfriend's device. However, based on Galan's counsel's representation that

14   Galan did not own a computer nor would have a computer for imaging at the meeting, Stryker's

15   vendor did not have the time or proper imaging device necessary to inspect even one of Galan's

16   two computers. To date, Galan has not provided these two computers again for inspection and

17   remediation despite requests to do so.

18       29.    During the August 28, 2023 inspection and subsequent investigation to remediate

19   Galan's cell phone, the third-party forensic imaging vendor conducted a search of the phone

20   utilizing specific search terms related directly to Stryker's Confidential Information. This initial

21   search revealed Stryker property and images. Based on the cross-reference of Stryker's

22   Confidential Information which Galan had previously improperly uploaded to his public website

23   with the initial search results that were obtained by forensic review of Galan's cell phone, it

24   appears that Galan did not store on his cell phone any of the Stryker Confidential Information he

25   posted on his website. It appears from this initial search that Galan had to have used a device and/or

26   account other than his cell phone to post Stryker's Confidential Information to his website.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 8

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

30.     The initial investigation of Galan's cell phone reveals that it contains numerous images and text that constitute Stryker Confidential Information. For example, Galan's phone contains multiple images and designs for the non-public next-generation LIFEPAK device Stryker is currently developing. These include an image of the device with Stryker's code name for this device, but in a non-Stryker branded format. These also include numerous thumbnails of text apparently related to the device. His phone also contains messages between himself and a recruiter and/or an unidentified hiring manager, in which he admits to disclosing at least some Confidential Information.

31.     Galan's cell phone also contains a screenshot of an undated request to the ChatGPT AI application to write a user interface design case study for a next-generation LIFEPAK Monitor/Defibrillator. As this screenshot only contains the beginning of the chat, it is unclear what additional Confidential Information Galan shared with ChatGPT, which may subsequently share such Confidential Information publicly on a massive scale.

32.     Considering that Galan had to have used a device and/or account other than his cell phone to post Stryker's Confidential Information to his website, counsel for Stryker followed up with counsel for Galan requesting that Galan produce for forensic review all other cell phones, laptops, tablets, hard drives, USB drives, storage devices, and other electronic devices, as well as access to his personal email accounts to search for Stryker property. On September 21, 2023, Galan's counsel represented, without providing a reason, that Galan cannot send his two computers (which he had previously denied owning) to the third-party imaging vendor.

### *Effect of Galan's Conduct*

33.     Galan already breached his Agreement, and violated Washington state and federal law regarding the protection of trade secrets, by publishing Stryker's highly confidential and trade secret information regarding prototypes of its devices on his personal website. Galan did not receive authorization from anyone at Stryker to do so, and in fact acknowledged that doing so was a mistake when Stryker demanded that he take that information down. Stryker does not know, and

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 9

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

may never know, how many unauthorized third parties viewed and/or copied that information from Galan's website during the time that it was available.

34.     While Galan removed Stryker's confidential and trade secret information from his personal website, that information *must have* been saved to a different device or account in order for him to publish that information in the first place. And although the August 8, 2023 forensic imaging and initial inspection of Galan's phone showed that he was in possession of numerous other files of text and images constituting Stryker's Confidential Information, the Confidential Information stored on his cell phone was not the same Confidential Information he had previously publicly posted on his website. Thus, Galan must have used a different device or account to publish Stryker's Confidential Information.

35.     Simply put, Galan already caused, and is continuing to cause and/or threatening to cause, significant irreparable harm to Stryker including the loss of the value of its confidential and trade secret information. Remedies at law are inadequate and cannot make Stryker whole.

**COUNT I**
**BREACH OF CONTRACT**

36.     Stryker hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 35.

37.     The Agreement that Galan entered into with Stryker constitutes a valid and enforceable contract.

38.     Stryker performed all of the duties and obligations it agreed to and owed Galan under his Agreement.

39.     The restrictions as to the use and disclosure of Stryker's Confidential Information contained in the Agreement are reasonable in their scope and are necessary to protect Stryker's legitimate protectable interests in its confidential business information, and other legitimate business interests.

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

40.     Galan breached, and continues to breach, the Agreement by retaining, disclosing publicly, and now refusing to return Stryker's Confidential Information.

41.     As a result of Galan's breach of contract, Stryker has been irreparably injured, and it continues to face irreparable injury. Stryker is threatened with losing the value of its Confidential Information, for which a remedy at law is inadequate.  Accordingly, Galan must be enjoined and restrained from further disclosure and unauthorized retention of Stryker's Confidential Information by Order of this Court and ordered to return Stryker's property.

42.     In addition, Stryker seeks actual, incidental, compensatory, and consequential damages based on Galan's blatant violations of the Agreement in an amount to be determined at trial.  Stryker also seeks its reasonable attorneys' fees and costs in connection with bringing this action, as agreed to under Section 8.1 of the Agreement.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF WASHINGTON UNIFORM TRADE SECRETS ACT, RCW 19.108.010, *ET SEQ.*

43.     Stryker hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 35.

44.     The information that Galan improperly retained from Stryker, some of which he published to his personal website and now refuses to return, constitutes trade secrets under the Washington Uniform Trade Secrets Act, RCW 19.108.010, *et seq.*

45.     Stryker derives significant economic value from such information not being generally known or readily ascertainable by proper means, and such information is the subject of reasonable efforts to maintain its secrecy.

46.     Galan misappropriated Stryker's trade secret information by retaining it after the end of his employment at Stryker despite his contractual obligation to return it at that time by publishing such information on his personal website, and by retaining such information in his possession despite Stryker's demands for its return and remediation.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 11

47.     Galan's actions are causing Stryker irreparable harm through the loss and/or public disclosure of its trade secret information, for which Stryker has no adequate remedy at law.

48.     Stryker seeks injunctive relief against Galan's further possession, disclosure, or use of its trade secrets. Stryker also seeks actual, incidental, punitive, compensatory and consequential damages, as well as attorney's fees and exemplary damages based on Galan's conduct in an amount to be determined at trial.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. 1836, *ET SEQ.*

49.     Stryker hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 35.

50.     The information that Galan improperly retained from Stryker, published to his personal website and now refuses to return, constitutes trade secrets under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

51.     Stryker derives significant economic value from such information not being generally known or readily ascertainable by proper means, and such information is the subject of reasonable efforts to maintain its secrecy.

52.      Stryker sells its defibrillator product in interstate commerce.

53.     Galan misappropriated Stryker's trade secret information by retaining it after the end of his employment at Stryker despite his contractual obligation to return it at that time, by publishing such information on his personal website, and by retaining such information in his possession despite Stryker's demands for its return or destruction. The value of that trade secrets that Galan misappropriated are far in excess of $100,000.00

54.     Galan's actions are causing Stryker irreparable harm through the loss and/or public disclosure of its trade secret information, for which Stryker has no adequate remedy at law.

55.     Stryker seeks injunctive relief against Galan's further possession, disclosure, or use of its trade secrets. Stryker also seeks actual, incidental, punitive, compensatory, exemplary and

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 12

consequential damages, as well as attorney's fees and costs, based on Galan's conduct in an amount to be determined at trial.

## **PRAYER FOR INJUNCTIVE RELIEF AND DAMAGES**

WHEREFORE, Stryker seeks judgment in its favor and an Order against Defendant Galan that grants the following relief:

A.   Enjoins Galan from using, possessing, or disclosing Stryker's confidential or trade secret information, including but not limited to information regarding Stryker's prototypes that Galan published to his personal website and other Stryker proprietary information in his possession, custody or control;

B.   Directs Galan to immediately return to Stryker all of its confidential and trade secret information in a manner that preserves electronic metadata associated with that information;

C.   Directs Galan to immediately provide to a third-party forensic vendor, of Stryker's choosing, all of his cell phones, laptops, tablets, hard drives, USB drives, storage devices, other cell phones, and other electronic devices for inspection and remediation of Stryker's confidential and trade secret information;

D.   Directs Galan to immediately provide to a third-party forensic vendor, of Stryker's choosing, access to his personal email accounts, personal cloud storage accounts, and any other accounts for inspection and remediation of Stryker's confidential and trade secret information;

E.   Awards Stryker Temporary, Preliminary, and Permanent Injunctive Relief by preventing Galan from continuing to possess, utilize and disclose Stryker's confidential or trade secretary information, as Stryker has no adequate remedy at law.

F.   Awards Stryker actual, incidental, compensatory, and consequential damages to be proven at trial;

G.   Awards Stryker exemplary or punitive damages in an amount to be proven at trial due to Defendants' willful and malicious activities;

H.   Awards Stryker its reasonable attorneys' fees and costs in bringing this action for breach and threatened breach of the Agreement, as agreed in Section 8.1 of the Agreement and statute; and

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1    I.    Awards Stryker such further relief as the Court deems necessary and just.

2

3  DATED:  October 20, 2023                Respectfully submitted,

                                           SEYFARTH SHAW LLP
4

5                                          By:   */s/ Andrew R. Escobar*

                                                 Andrew R. Escobar, WSBA No. 42793
6                                                999 Third Avenue, Suite 4700
                                                 Seattle, Washington  98104-4041
7                                                (206) 946-4910 | Phone
                                                 Email:  aescobar@seyfarth.com
8

9
                                                 Michael D. Wexler, *pro hac vice forthcoming*
10                                               Kevin J. Mahoney, *pro hac vice forthcoming*
                                                 Garreth A. DeVoe,  *pro hac vice forthcoming*
11                                               233 South Wacker Drive, Suite 8000
                                                 Chicago, Illinois  60606-6448
12                                               (312) 460-5000 | Phone
                                                 (312) 460-7000 | Fax
13                                               Email:  mwexler@seyfarth.com
                                                         kmahoney@seyfarth.coom
14                                                       gdevoe@seyfarth.com

15
                                                 *Attorneys for Plaintiff Stryker*
16                                               *Employment Company, LLC*

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 14